UNITED STATES *v.* STIRN (No. 612).[1]

WOODEN BEAMS WOUND WITH SPUN SILK.

To be admitted free of duty as a container of merchandise on which a specific duty is imposed, an article should not only be a container, but should be the usual container employed in transporting the goods. The importer failed to overcome by a preponderance of evidence the presumption of the correctness of the collector's finding that the beams in question were unusual containers, if containers they were, and therefore that presumption must prevail. Further, it is admitted that the beams were designed for some other use than the bona fide transportation of the merchandise to the United States. Under such circumstances additional duty would have been properly assessable on the beams even if they had been within the category of containers described by subsection 18 of section 28, tariff act of 1909.

United States Court of Customs Appeals, March 20, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7175 (T. D. 31332).

[Reversed.]

*D. Frank Lloyd*, Assistant Attorney General (*William A. Robertson* on the brief), for the United States.

*John Giblon Duffy* for appellee.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

This appeal involves the dutiability of wooden beams imported into the country wound with spun silk. The collector of customs at the

[1] Reported in T. D. 32350 (22 Treas. Dec., 485).

port of New York classified the beams as manufactures of wood and assessed them for duty at 35 per cent ad valorem under the provisions of paragraph 215 of the tariff act of 1909, which paragraph reads as follows:

215. House or cabinet furniture wholly or in chief value of wood, wholly or partly finished, and manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for in this section, thirty-five per centum ad valorem.

The importers, objecting to the classification and the duty assessed, alleged in their protest, duly filed, that as the beams were the usual containers of the silk wound upon them and necessary for the transportation thereof to the United States, they were entitled to free entry under subsection 18 of section 28 of said act, the part of which subsection material to the issue is as follows:

SEC. 18. That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price thereof, at the time of exportation to the United States, in the principal markets of the country from whence exported; that such actual market value shall be held to be the price at which such merchandise is freely offered for sale to all purchasers in said markets, in the usual wholesale quantities, and the price which the manufacturer or owner would have received, and was willing to receive, for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities, *including the value of all* cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other *containers* or coverings, whether holding liquids or solids, * * * *and if there be used for* covering or *holding imported merchandise, whether dutiable or free, any unusual article or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States,* additional duty shall be levied and collected upon such material or article at the rate to which the same would be subjected if separately imported.

The board, General Appraiser Somerville dissenting, sustained the protest and the Government appealed.

The beams which are the subject of controversy were wound with spun silk and were returned by the appraiser as manufactures of wood. The deputy appraiser reported to the collector that the beams were wooden cylinders from 4 to 6 feet long, centered with iron journal bearings to permit of their being set in looms and that they were an essential part of the weaving machine in which they were used over and over again for making the warp. The collector was further informed that the beams were not coverings, but articles or forms designed for use other than in the bona fide transportation of spun silk.

On the hearing before the board Philip Maguire, a Government examiner, was the only witness produced on behalf of the importers. He testified in effect that the beams were wooden cylinders from 4 to 6 feet in length and fitted with pins at the ends so that, wound with the silk, they might be set into the sockets of the loom and used as an essential part of the weaving machinery in the making of the warp. This witness also stated that spun silk of the kind imported in this

case usually comes into the country in hanks or skeins, but that when it is transported on beams it is carried on such beams as are here the subject of controversy.   The testimony of Examiner Maguire further disclosed that L. & E. Stirn was the only house which imported silk on beams and that that spun silk imported in hanks or skeins can not be utilized in making the warp of a fabric unless it be first put upon spools and then placed upon a beam from which it can be unwound as the process of weaving may require.   After stating, in substance, that he had been passing on silk on beams for a period of three years prior to November, 1910, the witness, in response to questions by the importers' counsel, admitted that during his service as examiner of silks prior to the passage of the tariff act of 1909, silk beams were treated as part of the silk and were not separately returned as manufactures of wood.

Just upon what theory the importers set up the claim in their protest that the beams were free under subsection 18 of section 28 of the present tariff act is a bit difficult to understand.

The coverings and containers which are referred to in the subsection cited seem to be those the value of which must be added to the value of the goods covered or contained to make the market value upon which an ad valorem rate of duty is required to be assessed. The beams, if they be containers at all, are containers not of ad valorem but of specific-duty goods, from which it would seem to follow that if the beams are entitled to free entry as usual containers they are so entitled not by reason of the provisions of subsection 18 of section 28 but by virtue of the principle laid down long ago in Karthaus v. Frick.   However, disregarding for the purposes of this case the inaccuracy of the protest, and electing to accept it as if it had claimed the beams to be the usual containers of specific-duty goods, it raises but one issue, and that is, Are the beams the usual containers of spun silk?   That is to say, Are they the containers usually employed in the established course of trade for the transportation of spun silk to the United States?   The protest makes no point as to the construction which should be placed on paragraph 397, and therefore, whether or not it was the intention of Congress to consider spun silk wound on beams as a single entity and to charge a specific duty on the silk in that particular form, we are not called upon to determine. It is well settled that the importer must stand or fall on the claims of his protest, and as a corollary to that proposition it follows that in this case the attention of the court must be confined to the consideration of whether the beams in controversy are *usual containers* for the transportation of that special class of specific-duty goods known as spun silk.

Whether wooden cylinders designed for ultimate use as yarn beams in a silk loom are containers within the reasoning of Karthaus v. Frick, or even within the meaning of subsection 18 of section 28 of the

tariff act of 1909, is, we think, open to very serious question. As ordinarily used "container" signifies that which incloses or is designed to inclose something else, and that the term is used in that same sense in subsection 18 of section 28 of the present tariff act seems to be strengthened by the enumeration therein of cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, and carboys, all of which inclose the merchandise and are recognized by the business world and by English speaking peoples as true containers.

It may be that the word "container" carries a meaning wider than that which we have suggested and wider than that indicated by its environment in subsection 18. But even if there were given to "container" a signification broad enough to cover not only that which holds by inclosing, but also that which holds by retaining or keeping in place, such a signification would result in nothing more than in fixing the status of silk beams as containers, and that standing alone would not be sufficient to entitle them to free entry. To be admitted free of duty as a container of specific-duty goods an article must not only be a container, but the container usually employed for the transportation of the goods contained, and this it was the duty of the importers to establish by a preponderance of credible evidence. In our opinion, the importers not only failed to show that the beams were usual containers, but the testimony of Examiner Maguire, the only witness called by them, tended to show the contrary. Maguire testified positively and directly that spun silk was not usually imported on beams and that its importation in that form was limited to one firm, namely, that of L. & E. Stirn, the appellants here. The deputy appraiser reported that the beams were not coverings and were articles or forms designed for use otherwise than in the bona fide transportation of yarns. In the face of this evidence, and having in mind the well-settled rule that every intendment obtains in favor of the collector's classification and that such classification must prevail unless the importer satisfactorily establishes that a different classification claimed by him is the correct one, we do not see how, under the terms of the protest, the beams in question can be lawfully admitted free of duty as the containers usually employed for the transportation of spun silk. *In re* Pacific Creosoting Co. (T. D. 29980). True, ever since 1890, the several tariff acts have imposed a duty on spun silk on beams, but from that it can hardly be deduced that such beams as these are containers, and much less that they are usual containers. The fact that Examiner Maguire had passed the beams as part of the silk for three years prior to November, 1910, is no evidence at all that the beams were usual containers.

Whatever may have been the action of Examiner Maguire in dealing with silk on beams, it can not be claimed in this case that his action

or that of the collector based upon it amounted to such a long-continued departmental construction of the statute then in force as would give to the beams the status of usual containers. Moreover, silk on beams at that time carried an ad valorem duty, and by express direction of the statute the value of all coverings of any kind and of all other costs, charges, and expenses incident to placing ad valorem merchandise in condition packed ready for shipment to the United States was made part of the dutiable value of the silk, and whether the beams were or were not usual their value would have been added to that of the silk, although if found unusual for covering or holding imported merchandise and designed for some other use than the bona fide transportation thereof they were subject to an additional duty. If they were not subjected to additional duty that might well have arisen from the fact that they were regarded by Mr. Maguire and the collector as incidental to the packing ready for shipment and not as coverings. Indeed, it is difficult to understand how they could have been treated as coverings in view of the decision of the board in T. D. 14559 and of the decision in United States v. Nichols (186 U. S., 298), both of which cases were decided long before Examiner Maguire began to pass upon silk on beams.

The opinion of the majority of the board seems to assume that under subsection 18 of section 28 of the tariff act of 1909 the collector assessed in this case additional duty on the beams as unusual articles or forms for covering or holding imported merchandise and designed for use otherwise than in the bona fide transportation thereof. So far as the record discloses, no additional duty appears to have been imposed by the collector on the beams. The silk and the beams on which it was wound were apparently treated by the collector exactly as if they had been separately imported, and there is nothing which would justify us in concluding that duty was assessed in any other way than on the weight of the silk, exclusive of the weight of the beams, which, in their turn, were separately assessed as manufactures of wood. But if the spun silk had been subject to an ad valorem duty and if the beams upon which it was wound were containers and the collector, acting under subsection 18, had treated the beams as unusual containers designed for some use other than the bona fide transportation of the goods, we could not say, upon the record and on such evidence as is here submitted, that his action was erroneous.

At the outset in every case of disputed classification the importer is confronted by the presumption in favor of the collector's finding. Before the importer can prevail that presumption must not only be overcome, but the correctness of the classification claimed by him must be shown by a clear preponderance of the evidence. Here there was not only the presumption that the beams were unusual containers, if containers they were, but the testimony adduced by the importers themselves tended to sustain rather than overcome that

presumption. Admittedly the beams were designed for some other use than the bona fide transportation of the merchandise to the United States. Under such circumstances additional duty would have been properly assessable on the beams even if they had been within the category of containers described by subsection 18 of section 28. *In re* Greenbaum (T. D. 10467); *in re* Pollmann (T. D. 21961); *in re* Pacific Creosoting Co. (T. D. 29980).

The decision of the Board of General Appraisers is *reversed*.

DE VRIES, Judge, did not sit in this case.