In re HEMPSTEAD (two cases).

(Circuit Court, E. D. Pennsylvania. August 9, 1899.)

Nos. 71 and 47.

CUSTOMS DUTIES—UNUSUAL FORMS OF COVERINGS.
    Glass tubes, in which chloride of ethyl, used by surgeons and dentists as a local anæsthetic, is imported, are so made that the liquid, which is very volatile, can be directly applied therefrom in the form of a spray or vapor to the part to be treated, being volatilized by the warmth of the hand. After the contents are exhausted, the tubes are worthless, and are thrown away. *Held*, that the fact of such use does not render the tubes separately dutiable, under the provisions of, section 19 of the customs administrative act of June 10, 1890, as an unusual form of holding or covering designed for use otherwise than in the bona fide transportation of the liquid.

These are appeals by William O. Hempstead, trading as O. G. Hempstead & Son, from an order of the general appraisers affirming the collector's action in assessing duty on certain coverings of imported merchandise.

Frank P. Prichard, for petitioner.
Michael F. McCullen and James M. Beck, for the United States.

GRAY, Circuit Judge. In each of the above cases the classification of similar articles is in question, and by agreement, therefore, the cases have been treated and will be considered together. The imported articles consisted of chloride of ethyl in certain glass coverings. These coverings were vials having a cap somewhat similar to those found on paint tubes and cologne bottles. The chloride of

ethyl or ether was intended for use in minor surgical operations by dentists and surgeons. By the pressure and warmth of the hand, after the metal cap of the covering is removed, the chloride of ethyl, which is an extremely volatile liquid, escapes from the covering in the form of a spray, which is applied directly to the gum or other part of the body which is to be operated upon. The importer, asserting that these coverings were simply intended for the protection and transportation of the ether until it was used, and were of no separate value or use apart from their contents, or after the contents were exhausted, claimed that they were not liable to a separate duty, inasmuch as they were the usual coverings for merchandise paying a specific duty; and that, in any event, if the vials were liable to a separate duty, they were dutiable, under paragraph 88 of the act of August 27, 1894, as vials holding less than one-fourth of a pint.' The collector assessed a separate duty on them as manufactures of which glass is the component material of chief value, under paragraph 102 of said act.

In section 19 of the act of June 10, 1890, it is provided that:

"If there be used for covering or holding imported merchandise, whether dutiable or free, any unusual article or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied and collected upon such material or article at the rate to which the same would be subject if separately imported."

The question presented to the court, then, is whether the appraisers were right in finding that these glass coverings of the chloride of ethyl were unusual in substance and form, and designed for use otherwise than in the bona fide transportation of such merchandise to the United States. The chloride of ethyl is an exceedingly volatile liquid, and escapes from the container in the form of a spray, and is used by dentists and surgeons as a local anæsthetic. The glass tubes in which it is imported are closed with a metal cap with a rubber lining, the tubes being drawn out to a small end with an exceedingly small aperture. The warmth of the hand volatilizes the liquid, and the vapor or spray escapes through this fine aperture at the end, and may thus be used by dentists and surgeons for local application in the glass tube in which it is imported. It is in testimony that prior to the importation in such tubes with a metal cap and rubber lining it was hermetically sealed, and, when once the container was unsealed, the whole contents had to be used, or it escaped; whereas, in the present form of importation, the cap can be replaced, and the remaining liquid preserved for future use. It is also in testimony, and is not contradicted, that these tubes, after their contents are exhausted, are of no value, and are thrown away; that the tube, as imported, has no value apart from its contents. We are of opinion that this tube, considering the peculiar character of the article it is intended to contain, and the necessity of protecting it from evaporation, is not an unusual article or form of "holding or covering" for the liquid imported. The fact that it can be used for the purposes for which it was intended without taking it from its original package will not destroy the bona fides of the use of this particular covering for transportation. We think our views in this matter are entirely consonant

with the principle covering the decision in Slattery's Appeal, 59 Fed. 450. The finding and order of the general appraisers in both cases are therefore reversed, and the appeals sustained, and the coverings in question declared not liable to a separate duty.