UNITED STATES *v.* HOHNER *et al.* (No. 1001).[1]

WOODEN TRAY BOXES CONTAINING HARMONICAS.

These tray boxes are used as well to display as to contain harmonicas. The law does not contemplate that these coverings, whose only design, purpose, or use other than for transportation is for displaying the harmonicas, should pay the additional duty imposed by subsection 18 of section 28, tariff act of 1909. That provision must be taken to be intended to prevent the importation, under the guise of coverings or containers, of unusual articles having a substantial, material, and valuable use for other purposes than merely holding or covering merchandise in the bona fide transportation thereof.

United States Court of Customs Appeals, April 29, 1913.

APPEAL from Board of United States General Appraisers, Abstract 29490 (T. D. 32760).

[Affirmed.]

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel), for the United States.

*Curie, Smith & Maxwell* (*Thomas M. Lane,* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The question here is whether certain coverings in which harmonicas were imported shall pay the additional duty which was assessed thereon by the collector under the provisions of subsection 18 of section 28 of the tariff act of 1909. This subsection provides that when imported merchandise is subjected to an ad valorem duty rate or to a duty in any manner based upon or regulated by its value the duty shall be assessed upon the actual market value or wholesale price thereof at that time in the principal markets of the country of exportation, "including the value of all cartons, cases, crates, boxes, * * * and other containers or coverings," and that—

If there be used for covering or holding imported merchandise, * * * any unusual article or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied and collected upon such material or article at the rate to which the same would be subjected if separately imported. * * *

The sample of the coverings in dispute before us when closed presents the appearance of a wooden box of width and length about 9 by 10 inches, respectively, and 5 inches in height. It is really a box having three trays or holders, the top one having a hinged cover. When closed this cover is the top of the box. The bottom of the top tray is the cover of the middle one, and the bottom of it, in turn, becomes the cover of the third tray, which has a bottom of its own and which constitutes the bottom of the entire box. The inside of each of these three trays is paper lined and inside the top cover is an advertisement of Hohner's harmonicas, one dozen of which are placed in each tray, and with their individual cases, later described, fill the same.

---

[1] Reported in T. D. 33393 (24 Treas. Dec., 651).

These trays are so connected by movable wooden strips or hinges screwed on the outside that when opened they present a stairlike appearance, exposing in an attractive manner the greater part of the contents of each tray. The harmonicas are designed to be sold at three different prices, 1 dozen at 25 cents, one at 35 cents, and the other at 50 cents for each harmonica, and each tray contains a printed statement showing the price of its contents. Each of the cheaper grades of harmonicas is in a separate cardboard case just large enough to hold it, while the cases of the highest priced ones are made either of wood, leather, or imitation leather or cardboard. When closed the trays are held together in box form by two looped wires, one on the front and the other on the back side, which are pressed over the top of a metal pin projecting from the box. These tray boxes have been used by appellees in making something like weekly importations of the harmonicas for some three years prior to January, 1912. The appellees also, during the same or a longer term, have imported the harmonicas in other boxes of about the same size, except that they were about 1 inch thick. These boxes, if they are correctly represented by exhibits before us, seem to have cardboard bottoms and tops, but otherwise to be of wood; are covered inside and out with paper, and have a hinged top, on the inside of which is an advertisement identical with that which appears in the top of the tray box, and each box contains a statement showing the price of its contents These boxes seem to be in sets of three, each box containing 1 dozen harmonicas, graded as to price in the same manner as those in the tray boxes. The completed tray box costs 2.55 marks (German) each, and a set of the three separate boxes 1 mark less. The cheaper boxes have always been passed as usual coverings. They are so made as to be adapted for display purposes similar to the tray box, but would take up more space and perhaps are somewhat less attractive in appearance. All these boxes go to the retailer, and therefrom he sells the harmonicas.

There was no direct evidence as to the form or kind of coverings used by others in importing harmonicas, except that importers' witness testified that he did not know that other importers used a like covering. These tray boxes, as well as the others used by the importers here, are, as we understand, when shipped, encased in pasteboard or other outer coverings.

The decision of the Board of General Appraisers, so far as material, is as follows:

Wooden cabinets containing harmonicas which are used to hold and display the harmonicas for sale in retail stores have been assessed as unusual coverings. As has been pointed out many times under the law providing for unusual coverings, not only must the coverings be unusual but designed for use otherwise than the bona fide transportation of the merchandise which they contain.

From the testimony and samples in these cases we are not convinced that the cabinets in question are either unusual to the extent or degree required by this law

or that they are designed for use other than in the bona fide transportation of the merchandise. We do not think that the law contemplates that the coverings of imported merchandise should be of such a flimsy and perishable character that they could not be used to display the goods for sale.

The Government contends the tray boxes or cabinets are unusual coverings for harmonicas, are designed for use otherwise than in transportation within the meaning of the subsection, and so are separately dutiable thereunder, which the importers deny.

It will be observed at the outset that the board has in effect found that these tray boxes or cabinets are not unusual coverings designed for use otherwise than in the bona fide transportation of the merchandise which they contain within the contemplation of the subsection, and that therefore to sustain the Government's contention it is incumbent upon us to reverse this finding of fact.

The only evidence in the case is that of one witness called by the importers and the exhibits which we have already described. It will also be noted that the board has found that one use of these containers is for the purpose of displaying their contents in retail stores.

A large number of court and board decisions have been cited, all of which we have examined, as well as others to which counsel did not call our attention. To attempt to analyze them all here would require more time and space than it seems necessary to use.

We assume that these tray boxes, in addition to the use they serve as containers of the harmonicas, are used for displaying their contents, and that one design in their manufacture was such use, and we assume that such use is limited to the display of the harmonicas imported therein. Such we understand to be the import of the board's opinion. The only thing in the case that might otherwise suggest is the appearance of the boxes themselves, but on that alone and in view of the board's decision we do not in this case feel justified in holding that these tray boxes are designed for any further use than as indicated.

The statute declares that the covering to be separately dutiable must be an "unusual article or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States."

In Oberteuffer v. Robertson (116 U. S., 499, 512) the Supreme Court held that the words "any material or form designed to evade duties thereon or designed for use otherwise than in the bona fide transportation of goods to the United States," found in section 7 of the act of 1883, implied that "if the boxes or coverings of any kind are not of a material or form designed to evade duties thereon and are designed to be used in the bona fide transportation of the goods to the United States" they were not subject to the additional duty. In that case the boxes or cartons which were alleged to be unusual

coverings were of paper and contained gloves or hosiery, each particular box containing a half dozen or a dozen pairs of the merchandise, and were packed in an outer case. Some of the cartons had a partition running through the middle with a half dozen pairs of the articles on each side of the partition. These cartons were for convenience of the trade in transporting the goods, and preserving, handling, and counting them, and had labels thereon showing the article, style, size, and quantity of their contents. It appeared that these cartons were of the usual kind known to the trade before the law was passed as customarily used for the purposes above mentioned, and were intended to accompany the goods and remain with them in the hands of the retail dealer until the contents were sold to the consumer. It was not claimed in the case that they were of a form or a material designed to evade duties, and the court in that case concluded that the cartons were not unusual coverings.

On the authority of the Oberteuffer case the Supreme Court, in Magone *v.* Rosenstein (142 U. S., 604), affirmed a judgment below to the effect that the small sliding boxes, now in everyday use, which contained safety matches, each box having a specially prepared ignition surface thereon, were not unusual coverings.

In Winters *v.* Cadwalader (42 Fed., 405), tried by jury in the Circuit Court in 1889, the merchandise was picture blocks imported in boxes. These blocks were designed to be arranged in six different pictures. On the lid of the box was pasted one illustration or example thereof, designed to be used by the child in assembling the blocks to produce the picture. The other five illustrations were shown upon separate sheets placed inside the box. The same section of the Act of 1883 was there invoked for the authority of assessing these boxes as unusual coverings. It appeared that it was the universal custom to transport these picture blocks in boxes of the kind there under consideration. In his instructions to the jury Judge Butler said the purpose of this seventh section "was to entitle importers of merchandise to relief from payment of duty upon the box, wrappings, or coverings that are usual and necessary in inclosing, protecting, and carrying the goods in course of transportation. It was intended for nothing more. It was not intended to relieve any part of the merchandise from taxation, but was intended to relieve this covering from liability to taxation. Wherever it is made to appear that the covering, boxes, wrappers, or bags are not honestly intended simply for that use but have another use or where it is shown that they are designed— that is, that they are applicable and intended, judging by their construction and subsequent use—for another additional use, then the law punishes the use of such wrapper or covering or box by subjecting it to a very high rate of duty. * * * This provision of the statute is entitled to a reasonable construction."

While leaving it to the jury to say whether the fact that the inside of the box had pasted thereon the picture for the purpose above mentioned was indicative of such use as to make the box separately dutiable, the judge did say to them that in his opinion it was not such a use, and the jury so found.

In United States *v.* Thurber (28 Fed., 56), also tried by jury in the Circuit Court, the question was whether certain boxes used in the transportation of matches were unusual coverings under the same section 7 of the act of 1883. The boxes were similar to those in the Obertcuffer case, on one side of which was a prepared surface for convenience in lighting the matches, which could not be easily lighted on any ordinary unprepared surface. In charging the jury the court said:

I shall hold, for the purposes of this case, that the word "transportation" in the expression "designed for use otherwise than in the bona fide transportation of goods to the United States" includes the transporting or carrying of the goods within this country to the hands of the consumer, so long as the boxes remain and are transported unbroken; and that the transportation referred to does not stop at the doors of the customhouse, but includes the transportation to the vest pocket, if you please, of the consumer.

The court further told the jury that they must find that the boxes were designed to subserve a substantial, material, and valuable use after transportation in order to warrant them in finding the boxes were unusual coverings. The verdict was that the boxes were not unusual coverings.

In T. D. 10467, decided in 1890, the Board of General Appraisers had before it boxes used in the importation of linen handkerchiefs, certain of which were made of paper, some having ornamental pictures and like decorations, one of which was embossed on the top with colored plush. It appeared that they were not unusual in material or form, but were common to the trade. The board said, construing section 19 of the customs administrative act of 1890, the applicable language of which was like that in the statute before us, that to subject coverings to the additional duty two conditions must exist—(1) that the coverings must be made of some unusual material, or in some unusual form or shape, so as to constitute an article not ordinarily used for the transportation of like merchandise to the United States, and (2) that the nature of the coverings must be such as to justify the inference that they were "designed for use otherwise than in the bona fide transportation of such merchandise to the United States." The boxes mentioned were by the board held not to be unusual coverings.

*In re* Hempstead (96 Fed., 94), in the Circuit Court, the same statute was under consideration as in T. D. 10467. The merchandise was glass tubes or vials containing chloride of ethyl, an exceedingly volatile liquid used by dentists and surgeons in the form of a spray

as a local anæsthetic, and as imported was designed and ready for use. Each tube had a metal cap. By the warmth of the hand after its cap was removed the contents were volatilized and escaped in the form of a spray. A part of the contents might be used at more than one time by simply replacing the cap after the first use and removing it when again required. The evidence was that after the contents were used the tubes were of no use or value and were thrown away, and that they had no value apart from their contents. It appeared that prior to the importation of the tubes in question similar ones had been used in importing the merchandise, but of such a character that when they were once unsealed the entire contents must be used or they escaped. The tubes in question were held to be the usual coverings.

In United States *v.* Richards (66 Fed., 730) the importations were opal glass bottles packed in wooden cases with cardboard partitions. The collector imposed an additional duty on the ground that they were unusual coverings, under the same section 19 of the customs administrative act. The Circuit Court, by Cox, Judge, orally said:

The trend of judicial decision upon this question is to the effect that the additional duty can not be levied unless it appears that it was the intention of the importer to introduce into the United States some article under the guise of a covering which is designed by him for use other than as a covering after the importation is completed. If the covering is suitable, proper, and not out of the ordinary, it should not be subjected to the additional duty. The court can not say that this importer intended— to put it plainly—to commit a fraud upon the revenue or to introduce here the wooden cases for use other than as bona fide packages for his bottles. Of course, bottles of this character require a package of some kind. To place them in a common wooden box, and prevent breakage by placing straw or pasteboard between them, would seem to be a proper and usual manner of packing. Upon the evidence before the board it is quite clear that this importer has for a number of years been importing these bottles in precisely the same way in which the bottles in question were imported. The board of appraisers reached a correct conclusion when they said this was a usual package for these bottles. Other importers may have brought in other bottles or possibly similar bottles in a different way, but to say that the packages in question are exceptional, unusual, and so out of the ordinary as to bring them within the provision in question does not seem to be warranted by the proof. The decision of the board is affirmed.

We think, in view of the obvious purpose of the statute under consideration and in the light of the cases referred to, as well as many others which we have examined but not cited, it must be concluded that Congress contemplated that the coverings or containers of imported merchandise, if they are such as are customarily and ordinarily used in its transportation, are not separately dutiable under the provisions of said subsection 18.

But if it appears that they are unusual and designed for some substantial, material, or valuable use other than that of holding or containing the merchandise while being therein transported, they are then subject to the additional duty. The transportation referred to

in the section may include placing the same in the hands of the retailer, or in some cases in the hands of the consumer, and an incidental use of the covering or container, if one exists, may be enjoyed by the retailer in selling the particular merchandise so transported. The value of the alleged unusual container or covering, as compared with that of its contents, may be important in determining whether it is or is not separately dutiable. If it appears that after its use as a holder or container of the merchandise imported therein it becomes a subject of trade and commerce here, or if it is generally devoted to other uses, its adaptability to which are an important inducement to the consumer to purchase the same with its contents, or if it is sold with its contents and materially enhances the value thereof to the consumer, any such facts may warrant its separate duty assessment under the section. For cases in this court touching somewhat upon the question, see Pacific Creosoting Co. v. United States (1 Ct. Cust. Appls., 312; T. D. 31407); United States v. Garramone (2 Ct. Cust. Appls., 30; T. D. 31577); United States v. Braun Chemical Co. (ib., 57; T. D. 31596); Spielman v. United States (ib., 61; T. D. 31626); Illfelder & Co. v. United States (ib., 299; T. D. 32040); United States v. Stirn (3 Ct. Cust. Appls., 62; T. D. 32350).

Now, in the case at bar, although the collector assessed these boxes as unusual coverings, the evidence shows they were in use, by these importers at least, when the law was enacted. They are as compared with their contents of negligible value. They serve as containers and holders of the merchandise until the retailer has disposed of their imported contents, are suitable and convenient for their handling and transportation, and are a substitute for other containers or coverings which the Government here does not argue would be separately dutiable, and, although the cost thereof is somewhat greater than of such other containers, there is nothing to show that this may not be compensated for by increased security and safety of transportation. They serve, it is true, the incidental purpose of displaying their contents when in the hands of the retailer, but this use we assume, as stated, to have been exhausted when the imported contents are disposed of. They do not appear to enhance the value of the merchandise contained therein nor to promote its salability, except by displaying the same, because obviously they are not sold with their contents to the consumer. Neither do they appear to become the subject of trade or commerce after their contents have been sold out.

We think the board was justified in holding that the law does not contemplate that these coverings, whose only design, purpose, or use, other than of transportation, was the display of their contents, should pay the additional duty imposed by said subsection

18, which was evidently intended to prevent bringing into this country, under the guise of a covering or container, unusual articles having a substantial, material, and valuable use for purposes other than of holding or covering imported merchandise in the bona fide transportation thereof.

The judgment of the Board of General Appraisers is *affirmed.*