UNITED STATES *v.* CHARLES H. DEMAREST, INC. (No. 3435) [1]

United States Court of Customs and Patent Appeals, November 2, 1931

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham, jr.*, and *Ralph Folks*, special attorneys, of counsel), for the United States.

*B. A. Levett* for appellee.

[1] T. D. 45293.

[Oral argument October 15, 1931, by Mr. Folks; submitted on record by appellee]

Before Graham, Presiding Judge, and Bland, Hatfield, Garrett, and Lenroot, Associate Judges

Lenroot, Judge, delivered the opinion of the court:

The United States appeals from a judgment of the United States Customs Court sustaining the protest of appellee herein.

The merchandise involved consists of containers in which ginger was imported. The containers are decorated, oval-shaped china jars, having similarly decorated covers or lids. Beneath the china cover is a wooden cork which prevents the contents from leaking.

The collector classified the merchandise as unusual containers and assessed them for duty at the ad valorem rate of 20 per centum under paragraph 776 of the Tariff Act of 1922 and, in addition, at the ad valorem rate of 70 per centum of their appraised value by virtue of the provisions of section 503 and paragraph 212 of said act.

Appellee protested said assessment, claiming that the jars in question were the usual coverings or containers of said ginger and that the merchandise was dutiable only at the rate of 20 per centum ad valorem under the provisions of paragraph 776 of said tariff act. The classification of the ginger itself is not involved in this appeal.

Upon the trial but one witness testified on behalf of appellee, and appellant offered no testimony. No brief was filed in this appeal by appellee. Samples of the jars involved were admitted in evidence.

The portion of the testimony of appellee's witness, Charles H. Demarest, material to the question here involved, is as follows:

Q. Are you familiar with the use of this merchandise?—A. Yes, sir.

Q. How long have you been importing it?—A. About 15 years.

Q. What is it?—A. Well, it is stem ginger put up in sirup.

Q. In your experience in importing stem ginger have you ever imported it in any other kind of container than this?—A. Never.

Q. Have you ever imported stem ginger in any other package than these jars?—A. No.

Q. Have you ever known it to be imported?—A. Stemmed ginger is imported in casks, but that is another packing of course for wholesale use.

Q. Is that in sirup?—A. Yes, sir.

Q. Have you ever found these jars to be used for other purposes than the transportation of the ginger content?—A. No other commercial use.

Cross-examination by Mr. Higginbotham:

Q. When you take these Exhibits 1 and 2 in your own home, they are perfectly suitable to hold some other commodity, like tea, are they not?—A. I don't know that they are used.

Q. You say the usual way of importing this commodity is in casks?—A. No; not for the retail trade.

Q. When the wholesale trade bill it out to the retail trade?—A. They put it up in the wholesale trade, put it up in tins, a different manner.

Q. They can put it up in a different manner than this?—A. They have crystallized ginger they put up in tins.

Q. How many years have you been importing this kind?—A. Fifteen years.

Q. Are you acquainted with your competitors in this same class of goods?—A. Yes.

Q. Do you know how they import ginger?—A. I know importers buy it in containers the same as we do.

Q. Like these?—A. Yes; common ginger put up in clay containers—common jar.

Q. In other words, your competitors sell it in a cheaper cover or container than this; this is a pretty high-class container, is it not?—A. Yes; high-class trade.

Q. And the purpose of putting it in this highly decorated jar is to attract a high-class trade?—A. I guess so; to get our price for it.

Q. If it came in the usual clay jar it would be cheaper, would it not?—A. No; because it is a cheaper kind of ginger, or ordinary kind of ginger they put in.

Q. These jars here are earthenware, are they not?—A. They are earthenware jars.

Q. Putting the ginger in these decorated jars is to attract a high-class trade and get a better price?—A. Yes.

Redirect examination by Mr. LEVETT:

Q. Did you ever know these jars to be used again in trade to hold ginger?—A. No; I never have.

Judge YOUNG. A coffee can can be used over again.

WITNESS. Any can can be used over again.

By Mr. HIGGINBOTHAM:

Q. They are for a business of a very high-class character, to attract a better class of trade, is that not so?—A. Of course that is true.

The decision of the lower court sustaining the protest was written by Judge Young and was specially concurred in by Judge Fischer. Judge Cline filed a dissenting opinion. From the judgment entered in accordance with said decision this appeal is taken. Appellee admits that if the said containers were "unusual" within the meaning of said section 503 of the tariff act, then the protest should be overruled.

The sole issue before us is whether the containers in question were "unusual" containers within the meaning of said section 503 of the Tariff Act of 1922, the pertinent portion of which reads as follows:

SEC. 503. * * * If there shall be used for covering or holding imported merchandise, whether dutiable or free of duty, any unusual material, article, or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duties shall be levied upon such material, article, or form at the rate or rates to which the same would be subjected if separately imported.

What are unusual containers of imported merchandise was considered by this court in the case of *United States* v. *Hohner et al.*, 4 Ct. Cust. Appls. 122, T. D. 33393, in construing the provisions of subsection 18 of section 28 of the Tariff Act of 1909, which provisions read as follows:

If there be used for covering or holding imported merchandise * * * any unusual article or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied and

collected upon such material or article at the rate to which the same would be subjected if separately imported. * * *

It will be observed that so far as the use of the word "unusual" is concerned, there is no material difference between the provisions of said Tariff Act of 1909 above quoted and section 503 of the Tariff Act of 1922.

In the case of *United States* v. *Hohner et al., supra*, this court, speaking of containers, said:

But if it appears that they are unusual and designed for some substantial, material, or valuable use other than that of holding or containing the merchandise while being therein transported, they are then subject to the additional duty. The transportation referred to in the section may include placing the same in the hands of the retailer, or in some cases in the hands of the consumer, and an incidental use of the covering or container, if one exists, may be enjoyed by the retailer in selling the particular merchandise so transported. The value of the alleged unusual container or covering, as compared with that of its contents, may be important in determining whether it is or is not separately dutiable. If it appears that after its use as a holder or container of the merchandise imported therein it becomes a subject of trade and commerce here, or if it is generally devoted to other uses, its adaptability to which are an important inducement to the consumer to purchase the same with its contents, or if it is sold with its contents and materially enchances the value thereof to the consumer, any such facts may warrant its separate duty assessment under the section. * * *

We think the foregoing states the rule that should be followed in determining what are "unusual" containers within the meaning of said section 503 of the Tariff Act of 1922.

Applying this rule to the case at bar, we are of the opinion that the judgment of the court below is clearly against the weight of the evidence.

We have heretofore quoted from the testimony in the record material to the question of whether the jars here in question are unusual containers.

It will be observed that upon direct examination the witness Demarest testified that he had been importing stem ginger put up in sirup for 15 years and had never imported it in any other kind of containers than those in issue. He was asked the following question:

Q. Have you ever found these jars to be used for other purposes than the transportation of the ginger content?

and answered:

A. No other *commercial* use. (Italics ours.)

Upon cross-examination he stated that he knew other importers bought this same class of goods in containers the same as he did. The following questions then were asked and the following answers given:

Q. Like these?—A. Yes, common ginger put up in clay containers—common jar.

Q. In other words, your competitors sell it in a cheaper cover or container than this; this is a pretty high-class container, is it not?—A. Yes, high-class trade.

The witness then testified that if ginger was imported in a usual clay jar it would be a cheaper or ordinary kind of ginger that is used in such a jar.

We think the testimony is very weak and unsatisfactory to establish even *prima facie* that the containers in question were usual containers; but, assuming that, standing alone, it would be sufficient, there are other facts that should be considered which establish that the judgment below is against the weight of the evidence.

In the first place, we have the samples themselves to consider. Upon inspecting them, we agree with the following statement in the dissenting opinion of Judge Cline:

* * * An inspection of these exhibits—*which are the only samples in the record before us*—discloses that they are artistically decorated china jars, obviously suitable for many uses other than the transportation of ginger. They are equipped with convenient lids to match the jars and have an attractive lustrous finish. The wicker work, which surrounds them, is easily removable; at present it serves as a handle, but the jars are complete for various utilitarian purposes without the wicker handles. (Italics quoted.)

We call attention to the fact that the decorated cover or lid serves no useful purpose in the transportation of the ginger, since it rests loosely over the cork underneath the same, which alone prevents the ginger content from leaking. It is obvious to us that the decorated lid is provided so that the article may be used for a useful or decorative purpose after the ginger has been removed.

Furthermore, in the case of *United States* v. *Hohner et al.*, *supra*, stress is laid upon the comparative value of the container and its contents. The court there said:

* * * The value of the alleged unusual container or covering, as compared with that of its contents, may be important in determining whether it is or is not separately dutiable. * * *

Upon the question of comparative value of the containers here in question and their contents we quote from the Government's brief as follows:

Consular invoice 4939 (entry 797040) discloses that under the item of "50 cases stem ginger ea 24 blue & white jars" the invoice value is "G 643.50," while the United States examiner indorsed the same in red ink: "on ginger alone total value $433.50. Jars unusual coverings 70 per cent (212) and 20 per cent (776) on $240," and on item "4 cases stem ginger ea 6 five-color jars" the invoice value is G $54, and the United States examiner indorsed in red ink: "Jars unusual coverings 70 per cent (212) and 20 per cent (776) on G $24."

The pertinent parts of consular invoice 5353 (entry 811867) reads: "20 cases stem ginger 24 ea 1-pound blue and white fancy jars. G $255.60." The United States examiner indorsed thereon in red ink: "70 per cent (212) and 20 per cent (776) on jars unusual coverings, value $100 U. S. Cy."

So, therefore, it would appear that the cost of the china jars, or containers here involved, is almost 50 per centum of the cost of the contents.

We have examined the record and find the foregoing statement to be correct.

Appellee, as far as the record shows, has never objected to the official appraisement of the containers, and we must accept as a fact that the containers have a value of approximately 50 per cent of their contents.

The lower court seems to have given no consideration to this fact which is a very material one. To hold that a container worth 17½ cents for a quantity of ginger worth 36 cents is a usual container for ginger would be justified only upon much stronger proof than has been adduced in this case.

We hold that the judgment of the lower court is clearly against the weight of the evidence and that the protest should have been overruled.

The judgment of the United States Customs Court is *reversed.*