BEFORE THE FIRST DIVISION, MAY 7, 1940

**No. 43642.**—Protests 998014–G, etc., of Geo. S. Bush & Co., Inc. (Portland, Oreg.).

BROWN, Judge: These are suits against the United States arising at the port of Portland, Oreg., for the recovery of duties claimed to have been improperly

exacted upon four lift vans in which the household effects of persons immigrating into the United States from Europe were imported. Duty was assessed thereon at the rate of 33⅓ percent ad valorem under the provision in paragraph 412 of the Tariff Act of 1930 for manufactures composed wholly or in chief value of wood, not specially provided for, obviously on the theory that they were designed for use otherwise than in the *bona fide* transportation of such effects to the United States and hence subject to additional duty under section 504 of the said act at the rate to which the same would be subjected if separately imported. They are claimed to be entitled to free entry as the usual and ordinary containers of duty-free articles.

The examiner in the appraiser's office who passed the merchandise in question and made the advisory return thereon described the vans as follows:

The four lift vans would average about 6 feet in width by about 7 feet in height, and would range from about 12 to 16 feet in length, and they were composed on the side, the frame would be probably 3 x 3's, and the sheathing on the side was 1 x 8's and 12's. They had strap iron around the bottom and the side running diagonally toward the center, with 6-inch rings at the top to which they hooked the slings for taking these lift vans off the ship. Several of these vans had stay bolts, tie rods, we call them tie rods, running diagonally on the sides and horizontal across the top, with bolts on the end, which made the vans more stable. They had a heavy tar paper top. The top was not flat; it was sort of concave, so that the water would run off, and the end from which the merchandise was to be taken was held in with four bolts. It was not nailed in.

He also testified that he knew of one such lift van which was used after importation into the United States to transport the household and personal effects of a person going back to Germany, and of four others which had been used as chicken houses after importation. On cross-examination he testified in response to a question of plaintiff's counsel that—

the construction of the majority of them would lead one to believe that they were fit for further use as containers.

The sponsor of the immigrants whose effects were imported in the vans at bar testified on behalf of the plaintiff that an attempt was made to sell the lift vans but that it was unsuccessful; that three of them had been cut up and destroyed, and that the fourth was also to be cut up as soon as time could be found for the purpose.

There have been a number of decisions of this court on the subject of lift vans classified as usual containers, among which may be cited Abstracts 518, 7819, and 37619. Each of these cases, however, seems to have gone off on a question of failure of proof.

The most exhaustive treatment of the subject of unusual containers or coverings appears to be found in the decision of the Court of Customs Appeals in *United States* v. *Hohner*, 4 Ct. Cust. Appls. 122, T. D. 33393, covering tray boxes used to display as well as to transport harmonicas. There the court said:

We think, in view of the obvious purpose of the statute under consideration [note—which was in all material respects the same as the existing statute], and in the light of the cases referred to, as well as many others which we have examined but not cited, it must be concluded that Congress contemplated that the coverings or containers of imported merchandise, if they are such as are customarily and ordinarily used in its transportation, are not separately dutiable under the provisions of said subsection 18.

But if it appears that they are unusual and designed for some substantial, material, or valuable use other than that of holding or containing the merchandise while being therein transported, they are then subject to the additional duty. The transportation referred to in the section may include placing the same in the hands of the retailer, or in some cases in the hands of the consumer, and an incidental use of the covering or container, if one exists, may be enjoyed by the retailer in selling the particular merchandise so transported. The value of the

alleged unusual container or covering, as compared with that of its contents, may be important in determining whether it is or is not separately dutiable. If it appears that after its use as a holder or container of the merchandise imported therein it becomes a subject of trade and commerce here, or if it is generally devoted to other uses, its adaptability to which are an important inducement to the consumer to purchase the same with its contents, or if it is sold with its contents and materially enhances the value thereof to the consumer, any such facts may warrant its separate duty assessment under the section. [Citing cases.]

In the case at bar the containers appear to have been *designed* (to use the word of the statute) for the transportation of the household effects which formed their contents. While they appear to have been well and substantially made of strong and well-reinforced materials, it must be remembered that they were required to hold their contents during a long voyage from Germany to the West Coast of the United States. By reason of having been so well made they were perhaps *incidentally* useful after arrival as homes for the humble chicken, or even for the transportation of other articles, as the examiner testified, but such use was fugitive or accidental and quite apart from the design which attended their original construction and use. This is demonstrated by the fact that the plaintiff could dispose of them in no other way than by cutting them up.

A comparison of the value of the van in each case with the value of its contents shows that the vans were worth from 1.6 percent to 4.1 percent of the value of the contents. Though by no means conclusive in and of itself as to the character of the merchandise, that fact, taken with the other facts brought out on the hearing, negatives any thought that it was the intention of the importer to introduce into the United States under the guise of a container or covering something that had a substantial, material, or valuable use other than of holding or containing the household effects of the importers during transportation.

The protest claim for free entry is sustained. Judgment will issue accordingly.