(C. D. 1625)

JULLIARD FANCY FOODS CO. *v*. UNITED STATES

United States Customs Court, Third Division

(Decided June 21, 1954)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This controversy involves the importation of 1,440 pots of Fleur de Lys prepared mustard from Marseille, France. Duty was assessed upon the mustard at the rate of 5 cents per pound under the provisions of paragraph 781, Tariff Act of 1930, as amended by the General Agreement on Tariffs and Trade, T. D. 51802. Duty was also assessed upon the earthenware containers at the rate of 50 per centum ad valorem and 10 cents per dozen pieces, upon the basis of value of 16 cents per set, consisting of pot and earthenware cover, under the provisions of paragraph 211, by virtue of section 504, as unusual containers, designed for use otherwise than in the *bona fide* transportation of the contents to the United States. A further duty was assessed under paragraph 412, as amended by T. D. 51802, at 16⅔ per centum ad valorem upon one wooden ladle with each pot, as manufactures of wood, appraised at 1⅖ cents each. The price

of the jar and the ladle was included in the price of the mustard. In consequence of such finding, duty was increased from $24.75 to $167.08. The duty assessed upon the wooden ladles is not here in question.

The plaintiff contends that the mustard jars in question are not unusual containers within the purview of section 504 and, therefore, additional duties should not have been assessed.

At the trial of this case, the vice president and general manager of plaintiff testified that he has been familiar with the brand of mustard in question for the 27 years he has been associated with the handling, purchasing, and selling of fancy foods, including the mustard in question; that he has personally used this particular brand of mustard in his home and has seen others use it over a period of many years. A sample of the mustard jar at issue, taken from this particular shipment, according to the witness, was admitted in evidence as exhibit 1.

The witness further testified that during the 27 years he had handled this particular brand of mustard it had been packed in a jar identical in form, coloring, and label as exhibit 1, there being no change during the entire period. As for the jars surviving the use of holding the mustard shipped therein, the witness testified:

A. Everyone that I know of that has used it, does not keep the jars. I know my wife will not keep them. We have several friends that don't keep them.

Q. Mr. Cramer, one of the ultimate points which is of interest to the Court is whether that jar as you see it in Exhibit 1 is designed for use otherwise than in the bona fide transportation of the merchandise to the United States. Do you know or from its form, is there any use for that jar other than to carry the merchandise to the United States and permit its use here?—A. I don't know of any other use for it. It has the company's trade name on the jar.

On cross-examination, the witness was of the opinion that the jar, when empty, would not be suitable for jam. He also testified that, in his opinion, the jar was not decorative because it had a packer's label on it, indicating that the jar contained mustard, together with the declaration that it had been manufactured by Grey Poupon since 1777. The only decorations thereon appear to be the seller's trade-mark.

Counsel for the plaintiff conceded that the value of the jar and cover was 16 cents, and the wooden ladle $0.012.

Counsel for the plaintiff contends that the container is not within the class of unusual coverings because it is the ordinary container for this particular kind of mustard and the only container ever used to hold same, citing *May Department Stores Co.* v. *United States*, 62 Treas. Dec. 906, Abstract 21578, and *Tonkin Distributing Co.* v. *United States*, 64 Treas. Dec. 1050, Abstract 25882.

It is further contended that the phrase under section 504 "bona fide transportation of such merchandise to the United States" included

accompanying the article into the hands of the ultimate consumer, citing *Oberteuffer* v. *Robertson*, 116 U. S. 499; *United States* v. *Thurber*, 28 Fed. 56; and *Rosenstein* v. *Magone*, 34 Fed. 120, which was affirmed by the Supreme Court in *Magone* v. *Rosenstein*, 142 U. S. 604.

The Government contends that the jars in question, made of earthenware, are highly decorative, refillable, and capable of being reused; that they were not the usual containers for mustard; and that the facts herein are similar to the facts in the case of *United States* v. *Charles H. Demarest, Inc.*, 19 C. C. P. A. (Customs) 186, T. D. 45293, involving the importation of ginger in decorated china jars, wherein the jars were held to be unusual containers. Government also cites the case of *Meyer & Lange* v. *United States*, 12 Ct. Cust. Appls. 15, T. D. 39892, concerning decorated earthenware mugs, containing mustard, held to be unusual containers, and *Lee & Schiffer, Inc.* v. *United States*, 69 Treas. Dec. 1283, Abstract 34052, where shaving bowls, containing soap, were held dutiable separately, because the bowls could be used as refills and were designed for purposes other than the *bona fide* transportation of the soap to the United States. Government counsel also stresses that the value of the jar, as compared with the value of the mustard, is an indication that the jars should be classed as unusual containers.

The jar containing mustard in evidence herein as exhibit 1 stands 3½ inches high. It is about 2¾ inches in diameter at the widest part. The diameter of the base is 2¼ inches. The top of the jar is 1⅞ inches in diameter. The top is covered with a metal cap, hermetically sealing in the contents. Attached with scotch tape to the bottom of the jar is a plain earthenware cap, having a hole at one edge for the insertion of a mustard ladle. In fact, the article looks like and is an ordinary mustard jar. The earthenware is of an off-white color. The only decorations, blue in color, appear on one side and resemble a coat of arms, with words in the French language on either side thereof, and, at the bottom, the words "Grey 1777 Poupon." On the reverse side of the jar appears a similar floral decoration surrounded by French words. On the bottom of the jar appear further French names, with the English words "Packed in France."

From the appearance of this jar, it is difficult to discover anything extraordinary about it, save the French words and the coat-of-arms trade-mark. It is an ordinary mustard pot with a cover, and there is no indication in the design of the jar to suggest that it is suitable for any other use than to hold its contents until consumed. There is nothing about this representative sample which would even suggest that it is highly decorative, as claimed by Government counsel.

The ginger jars in the *Demarest* case, *supra*, were described as artistically decorated china jars, obviously suitable for many uses other than the transportation of ginger. It was obvious to the court

that the decorated lid was provided with the jar so that the article might be used for a useful or decorative purpose after the ginger had been removed. That is not true with the supplied earthenware top of the mustard jar, which obviously is intended for use with the contents thereof, after the removal of the sealed tin top, not replaceable after removal. The court there cited with approval what the court stated in the case of *United States* v. *Hohner et al.*, 4 Ct. Cust. Appls. 122, T. D. 33393. In the *Hohner* case, the court pointed out that the transportation referred to in the law may include placing the same in the hands of the retailer, or, in some cases, in the hands of the consumer, and an incidental use of the covering or container may be enjoyed by the retailer in selling the particular merchandise so transported. The value of said container, as compared with its contents, according to the court, might be of importance in determining whether it is or is not separately dutiable. But, from the wording of that decision, it was not intended that the value of the container should be used as a criterion in such matter. However, the court pointed out that—

* * * If it appears that after its use as a holder or container of the merchandise imported therein it becomes a subject of trade and commerce here, or if it is generally devoted to other uses, its adaptability to which are an important inducement to the consumer to purchase the same with its contents, or if it is sold with its contents and materially enhances the value thereof to the consumer, any such facts may warrant its separate duty assessment under the section. * * *

The court pointed out in the *Demarest* case, *supra*, that the proof as to the container in that case being "usual" was very weak and that to justify its classification as an unusual container, when the ginger therein cost 36 cents and the container 17½ cents, such proof would have to be much stronger.

In the case at bar, there is nothing before the court to establish that the container had any other use than that of containing its contents while being transported and until consumed. The decorations thereon are not in the class of decorative articles which one would wish to use as ornaments. The jar would have no use other than as a mustard pot and obviously was designed for no other purpose. In the case of *Lee & Schiffer, Inc.*, *supra*, cited by the Government, the shaving bowls were imported with shaving soap therein, but there were also additional cakes of soap not in the containers, conceded to be intended as refills for the bowls. That case obviously is not applicable to the situation here presented. In the *Meyer & Lange* case, *supra*, the mustard was imported in mugs with handles, the mugs being colored and decorated with figures in relief of children and trees. The court regarded the size of the mugs, especially the larger ones, to have a greater adaptability for other uses after the mustard had been taken therefrom, the court stating:

* * * It is obvious that the handles of the mugs, when contrasted with jars that have no handles, suggest that they are designed for use otherwise than in bona fide transportation of mustard to this country, because in packing the same for transportation the handles would apparently be a detriment rather than a benefit.

None of the cases, holding containers to be unusual, upon which the Government relies, are applicable to the particular situation here confronting the court. The books are replete with decisions concerning the question of usual containers.

In the case of *May Department Stores Co.*, *supra*, certain Dusseldorf mustard was imported in original pots, which were held to be the usual coverings of the imported mustard. In *Tonkin Distributing Co.*, *supra*, earthenware jugs, containing nonalcoholic cordials, which were colored blue and cream and had a blue floral decoration extending around the jug, which also had a long handle, were held to be the usual containers for such class of merchandise, having been shown to be the coverings for such cordials for many year. In *W. X. Huber Co.* v. *United States*, 3 Cust. Ct. 316, C. D. 267, earthenware jars, containing dried cabbage, having been the usual containers thereof for more than 30 years, and which, after the removal of the cabbage, were thrown away, were held to be usual containers. The court there pointed out that in *Oberteuffer* v. *Robertson*, *supra*, the Supreme Court stated that if the coverings are not of a material or form designed to evade duties thereon, and are designed to be used in the *bona fide* transportation of the goods to the United States, they are not subject to duty as unusual containers. The Supreme Court held them to be usual containers, not only because they were the customary article in the trade for covering and transporting such goods, but also because they were intended to accompany the goods and remain with them in the hands of the retail dealer until the goods should be sold to the consumer. In *Winters* v. *Cadwalader*, 42 Fed. 405, Judge Butler, in his charge to the jury, stated that wherever it is made to appear that coverings are not honestly intended simply for that use but for additional or another use, or where it is shown that they are designed, that is, that they are applicable and intended, judging by their construction and subsequent use, for another additional use, then the law punishes the use of such covering by subjecting it to a high rate of duty.

In *Will & Baumer Candle Co., Inc.* v. *United States*, 37 C. C. P. A. 27, C. A. D. 414, glass containers, imported with wax candles suitable for fitting into sanctuary lamps, and having etched thereon the trade name "Sanctolite," were assessed for duty at 60 per centum ad valorem as decorated articles in chief value of glass. They were claimed dutiable under paragraph 217, as amended, at ½ cent per pound as being "suitable for use and of the character ordinarily employed for the holding or transportation of merchandise." The Customs Court,

one judge dissenting, held in C. D. 1146 that there was no evidence establishing that these jars were of the character described in the paragraph, but were most extraordinary in design, obviously manufactured for a definite purpose other than as a jar "ordinarily employed for the holding or transportation of merchandise." The use of the article as a shipping container was held merely incidental to its main or principal use as a holder for the candle, when used in the sanctuary lamp.

Upon appeal, the decision of the court was reversed, the appellate court stating:

The candles which are "held or transported"—in the instant case they are both held *and* transported—certainly are merchandise, although they are designed for a special use. The containers themselves, the only articles whose classification is of concern here, are certainly suitable for use in holding the candles and for transporting them, and they are in fact ordinarily so used by appellant. Indeed, they appear to have been developed for those precise uses. They ordinarily hold the merchandise before it is sold and hold it while it is being transported to the purchaser, thus meeting both alternatives designated in the proviso.

We do not think that in order to fall within the meaning of the phraseology of the proviso the containers are required to be of a kind suitable to be used and ordinarily used in holding or transporting *all kinds* of candles. Where a special type of such merchandise exists and a specially designed container is made and used for holding or transporting it, we think the requirement of the statute is met, provided, of course, the container meets the statutory requirements in other respects. [Italics quoted.]

The merchandise before the court in this case is an ordinary mustard jar. It is provided with the usual mustard jar cover when the sealed cover is removed. It holds a particular kind of mustard. It follows its contents into consumption and is then, according to the evidence, discarded. We find it to be nothing more than the usual covering for the particular class of mustard contained therein.

Judgment will, therefore, be entered in favor of the plaintiff, directing the collector to reliquidate the entry and refund all duties taken thereon in accordance with law.