(C. D. 1795)

MEDITERRANEAN IMPORTING CO., INC. *v.* UNITED STATES

## United States Customs Court, First Division

(Decided July 26, 1956)

*Barnes, Richardson & Colburn (Edward N. Glad* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *Murray Sklaroff*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The merchandise in this case consists of certain glass containers, which were imported filled with wine, invoiced as "ICE DECANTERS." The articles involved were classified by the collector as articles of bubble glass, produced otherwise than by automatic machine, and assessed with duty at the rate of 30 per centum ad valorem under the provisions of paragraph 218 (f) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by Presidential proclamation, T. D. 51898. The collector's action was taken pursuant to section 504 of the Tariff Act of 1930, the containers in question being considered as "unusual" containers of the merchandise contained therein. The classification of the contents of the containers is not challenged, so we are concerned only with the "ice decanters."

Plaintiff claims that the ice decanters in question are properly dutiable at 1 cent per pound under paragraph 217 of the Tariff Act of 1930 as bottles in chief value of glass "of the character ordinarily employed for the holding or transportation of merchandise," not including bottles for table service. Alternatively, plaintiff claims that these bottles are not "unusual" containers within the purview of section 504, *supra*, and, therefore, are properly dutiable at only one-third of the rate provided for under paragraph 217 of the Tariff Act of 1930, or at said rate under paragraph 218 (f) of the act, as modified, *supra*, if classifiable thereunder.

The provisions of the Tariff Act of 1930, so far as pertinent to the decision of this case, are as follows:

Paragraph 217—

Bottles, vials, jars, ampoules, and covered or uncovered demijohns, and carboys, any of the foregoing, wholly or in chief value of glass, filled or unfilled, not specially provided for, and whether their contents be dutiable or free * * * shall be subject to duty as follows: If holding more than one pint, 1 cent per pound; * * * Provided, That the terms "bottles," "vials," "jars," "ampoules," "demijohns," and "carboys," as used herein, shall be restricted to such articles when suitable for use and of the character ordinarily employed for the holding or transportation of merchandise, and not as appliances or implements in chemical

or other operations, and shall not include bottles for table service and thermo-static bottles.

Paragraph 218 (f), as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by Presidential proclamation, T. D. 51898—

Table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or other-wise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed in any man-ner, sandblasted, silvered, stained, or decorated or ornamented in any manner, whether filled or unfilled, or whether their contents be dutiable or free (except articles primarily designed for orna-mental purposes, decorated chiefly by engraving and valued at not less than $8 each):

> If commercially known as bubble glass and produced other-wise than by automatic machine (except articles cut or engraved and valued at not less than $1 each)_____ 30% ad val.

Paragraph 810—

When any article provided for in this schedule is imported in bottles or jugs, duty shall be collected upon the bottles or jugs at one-third the rate provided on the bottles or jugs if imported empty or separately.

SEC. 504. COVERINGS AND CONTAINERS.

If there shall be used for covering or holding imported merchandise, whether dutiable or free of duty, any unusual material, article, or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duties shall be levied upon such material, article, or form at the rate or rates to which the same would be subjected if separately imported.

But one witness appeared before the court, Cesare A. DeRegibus, a wine merchant called by the plaintiff. This witness had had con-siderable experience in selling wines and other beverages over a period dating back to 1936. In substance, Mr. DeRegibus testified that wine of the same type (Chianti) as that contained in plaintiff's ex-hibit 1 can be, and is, imported in ordinary bottles; that the ice decanter (plaintiff's exhibit 1) was first used in Italy, for the purpose of chilling wine, inasmuch as the people there were too poor to afford frigidaires and iceboxes; that the spout on plaintiff's exhibit 1 is used to pour out the contents of the decanter because, if wine were poured from the top of the bottle, the water from the melted ice in the cooling chamber of the decanter would spill out; that the straw corks attached to the bottle are to fill the openings in the top of the bottle, the cool-ing chamber, and the spout; and that the container is an oddity which the importer hoped would increase the wine sales.

Mr. DeRegibus explained that, after making allowance for certain packing costs, exclusive of the value of the containers, the actual

difference in cost between ordinary containers and the decanters, such as plaintiff's exhibit 1, was from $1.50 to $1.75 for a case of 12 quarts (R. 15).

The testimony clearly establishes that the importer paid for the wine at the rate of $5 for 6 quarts in the containers represented by plaintiff's exhibit 1, f. o. b. Italy, and $6 for 12 quarts in the regular bottles. In other words, the decanters with the wine content cost the importer 83 cents a quart, while the same quantity of wine of the same quality contained in regular bottles cost him 50 cents a quart.

In this case, not only was the imported merchandise invoiced as ice decanters, but the articles in question were said by plaintiff's witness, DeRegibus, to be correctly called "ice decanters" (R. 9–10). This characterization of the importation should be borne in mind.

Merchandise apparently in all respects similar to the importation now before us was under consideration in the case of *Granucci Hardware Co.* v. *United States*, 58 Treas. Dec. 1095, Abstract 13732, the containers involved being described by the court as follows:

The merchandise (Exhibit 1) somewhat resembles in shape and size the well-known bottle in which Italian Chianti was once imported. It is composed of clear or colorless glass and is partly covered with plaitted straw, plaitted reed, or wickerwork. It differs from an ordinary Chianti bottle in that it has a glass pocket of the size and shape of a good-sized incandescent electric-light bulb which extends into the interior of the bottle. In addition, besides the ordinary bottle neck and orifice for a cork or other stopper, a glass spout, resembling the spout of a tea kettle, is attached to one side, through which the contents may be poured. There is also a stopper for the glass pocket composed of the same kind of reed or wickerwork which covers the body of the bottle, also a stopper of the same material for the neck of the bottle. These stoppers are attached to the covering by strings of the same material as the covering of the bottle.

In the *Granucci* case, *supra*, the merchandise was classified under the provisions of paragraph 218 of the Tariff Act of 1922, "which," said the court, "as far as pertinent, reads as follows":

* * * table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass, * * * blown or partly blown * * *.

Plaintiff claimed the merchandise properly dutiable under paragraph 217 of the said act at the applicable rate as glass bottles or jars, etc., "when suitable for use and of the character ordinarily employed for the holding or transportation of merchandise," and not including bottles for table service, or dutiable under paragraph 230 of said act at 50 per centum ad valorem as manufactures of glass.

The court overruled the protest and held—

* * * The testimony in this case, coupled with an inspection of the sample, indicates that these bottles are for table service. This merchandise is not such

bottles as fall within paragraph 217 as it is not used for the holding or transportation of merchandise.

In the case of *United States* v. *W. J. Mulligan & Co.*, 29 C. C. P. A. (Customs) 117, C. A. D. 179, the appellate court stated that the controversy "relates solely to the assessment upon the containers which are described in the decision of the trial court as follows":

There is no sample, but these articles are described by Mr. Dimpfel, the examiner at the port of San Francisco, to be transparent glass containers of liquor in the form of penguins, chickens, pelicans, owls, elephants, and dogs, about $2\frac{1}{2}$ to 4 inches long, containing $\frac{5}{100}$ of a liter apiece, and that the 48 of them held about $\frac{56}{100}$ of a gallon.

In that case, the collector considered the articles as "unusual" containers and, in classifying the merchandise under paragraph 218 (f) of the Tariff Act of 1930, invoked section 504 of the act and assessed duty at the full rate of 60 per centum ad valorem, provided in paragraph 218 (f), notwithstanding the provisions of paragraph 810 of the act. The importer claimed the importation "properly dutiable at $16\frac{3}{8}\cancel{c}$ gross under par. 217; or at $\frac{1}{8}$ of the rate assessed under provisions of paragraph 810." After the court had discussed the applicability of paragraph 810, *supra*, to paragraph 217 of the Tariff Act of 1930, it then stated as follows:

We come next to the question of whether the articles before us are unusual containers. As has been stated, it appears to be the position of appellee that even though they be unusual containers within section 504, *supra*, they nevertheless are subject to the provisions of paragraph 810, *supra*.

With this contention we are unable to agree.

Section 504, *supra*, of the Tariff Act of 1930 appears as one of the administrative provisions of the act, and it seems to us that by its terms it modifies all schedules and paragraphs embraced in the various titles relating to classification and rates of duty. It does not affect the question of classification *per se*, but does affect the rate based upon such classification. If the articles here involved had been imported unfilled, we must assume for the purposes of this case that they would have been classifiable under paragraph 218 (f), *supra*, and it seems to us that if they were unusual containers for the merchandise with which they were filled, paragraph 810, *supra*, may not properly be invoked.

On the question of what constitutes an unusual container, the court, in the *W. J. Mulligan & Co.* case, *supra*, stated:

In the case of *United States* v. *Charles H. Demarest, Inc.*, 19 C. C. P. A. (Customs) 186, T. D. 45293, we quoted with approval from our decision in the case of *United States* v. *Hohner et al.*, 4 Ct. Cust. Appls. 122, T. D. 33393, the following:

But if it appears that they are unusual and designed for some substantial, material, or valuable use other than that of holding or containing the merchandise while being therein transported, they are then subject to the additional duty. The transportation referred to in the section may include placing the same in the hands of the retailer, or in some cases in the hands of

the consumer, and an incidental use of the covering or container, if one exists, may be enjoyed by the retailer in selling the particular merchandise so transported. The value of the alleged unusual container or covering, as compared with that of its contents, may be important in determining whether it is or is not separately dutiable. If it appears that after its use as a holder or container of the merchandise imported therein it becomes a subject of trade and commerce here, or if it is generally devoted to other uses, its adaptability to which are an important inducement to the consumer to purchase the same with its contents, or if it is sold with its contents and materially enhances the value thereof to the consumer, any such facts may warrant its separate duty assessment under the section. * * *

The appellate court thereupon held that the importer had failed to overcome the presumption of correctness attaching to the collector's classification of the articles under section 218 (f) of the Tariff Act of 1930 and the assessment of the items as "unusual" containers under the provisions of section 504 of the act.

In *United States* v. *Hohner et al.*, 4 Ct. Cust. Appls. 122, T. D. 33393, the merchandise consisted of certain tray boxes, used for shipping and displaying harmonicas. These boxes were subjected to additional duties by the collector under the provisions of subsection 18 of section 28 of the Tariff Act of 1909, which provided:

If there be used for covering or holding imported merchandise, * * * any unusual article or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied and collected upon such material or article at the rate to which the same would be subjected if separately imported.' * * *

"There was no direct evidence," said the court, "as to the form or kind of coverings used by others in importing harmonicas, except that importers' witness testified that he did not know that other importers used a like covering. These tray boxes, as well as the others used by the importers here, are, as we understand, when shipped, encased in pasteboard or other outer coverings." The Board of General Appraisers (protests of *M. Hohner et al.*, 23 Treas. Dec. 93, Abstract 29490) reversed the decision of the collector because, it stated:

From the testimony and samples in these cases we are not convinced that the cabinets in question are either unusual to the extent or degree required by this law or that they are designed for use other than in the bona fide transportation of the merchandise. We do not think that the law contemplates that the coverings of imported merchandise should be of such a flimsy and perishable character that they could not be used to display the goods for sale.

The appellate court, in the *Hohner* case, *supra*, upheld the position taken by the Board of General Appraisers. However, that case is clearly distinguishable from the situation with which we are now confronted, for, as stated by the appellate court therein, page 128:

Now, in the case at bar, although the collector assessed these boxes as unusual coverings, the evidence shows they were in use, by these importers at least, when

the law was enacted. They are as compared with their contents of negligible value. They serve as containers and holders of the merchandise until the retailer has disposed of their imported contents, are suitable and convenient for their handling and transportation, and are a substitute for other containers or coverings which the Government here does not argue would be separately dutiable, and, although the cost thereof is somewhat greater than of such other containers, there is nothing to show that this may not be compensated for by increased security and safety of transportation. They serve, it is true, the incidental purpose of displaying their contents when in the hands of the retailer, but this use we assume, as stated, to have been exhausted when the imported contents are disposed of. They do not appear to enhance the value of the merchandise contained therein nor to promote its salability, except by displaying the same, because obviously they are not sold with their contents to the consumer. Neither do they appear to become the subject of trade or commerce after their contents have been sold out.

In the instant case, the containers are of very substantial value, as compared with the contents, and materially enhance the value of the contents to the purchaser; they do not increase the security and safety of transportation, but definitely increase the risk of transportation, as compared with regular containers, and require more careful and extensive packing; they are sold with the contents and used to promote the sale of the contents, their adaptability to their indicated use being "an important inducement to the consumer to purchase the same with its contents." Furthermore, they are definitely used for other purposes than that of containers for transportation, to wit, as decanters and as coolers, as substitutes for frigidaires and iceboxes.

We are, therefore, of the opinion and hold that the importation, represented by plaintiff's exhibit 1, consists of unusual containers; that, in any event, the presumption of correctness attaching to the collector's classification has not been overcome. Accordingly, we hold the involved containers properly classifiable as articles of bubble glass, produced otherwise than by automatic machine, under the provisions of paragraph 218 (f) of the Tariff Act of 1930, as amended, *supra*, with a duty assessment of 30 per centum ad valorem, pursuant to the provisions of section 504 of the said act. For the reasons aforesaid, the protest claims herein are overruled.

Judgment will be entered accordingly.