(C. D. 1397)

W. A. Taylor & Co. *v.* United States

United States Customs Court, Third Division

(Decided March 11, 1952)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge: The merchandise in this case consists of containers of port wine. There is no controversy concerning the classification of the contents. The containers are of chinaware in the form of a Spanish gentleman wearing a black hat and cloak, which represents the trade-mark of Geo. G. Sandeman Sons & Co., Ltd., English wine and liquor dealer, and the exporter herein. The collector at the port of New York considered the articles to be unusual containers and, after transmitting his opinion in the matter to the Commissioner of Customs and receiving a favorable reply that the provisions of paragraph 810 of the Tariff Act of 1930 should be disregarded, in view of the decision of the Court of Customs and Patent Appeals in *United States* v. *W. J. Mulligan & Co.*, 29 C. C. P. A. 117, C. A. D. 179, he assessed duty upon the chinaware bottles at the rate of 45 per centum ad valorem under paragraph 212, as amended by Presidential proclamation (T. D. 51909), supplementing the General Agreement on Tariffs and Trade (T. D. 51802). The plaintiff claims that the articles are not unusual coverings and, therefore, are dutiable at only one-third of the rate of 45 per centum ad valorem by virtue of paragraph 810.

The paragraphs and sections of the Tariff Act of 1930 provide as follows:

PAR. 212 [as amended by T. D. 51909]. China, porcelain, and other vitrified wares, * * * and all other articles composed wholly or in chief value of such ware:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, n. s. p. f.:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Not containing 25 per centum or more of calcined bone, 50¢ per doz. but not less than 45% nor more than 70% ad val.

PAR. 810. When any article provided for in this schedule is imported in bottles or jugs, duty shall be collected upon the bottles or jugs at one-third the rate provided on the bottles or jugs if imported empty or separately.

SEC. 504. COVERINGS AND CONTAINERS.

If there shall be used for covering or holding imported merchandise, whether dutiable or free of duty, any unusual material, article, or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duties shall be levied upon such material, article, or form at the rate or rates to which the same would be subjected if separately imported.

At the trial it was stipulated and agreed between counsel for both sides as follows:

MR. QUALEY: I offer to stipulate with counsel for the Government that the containers at issue are identical in appearance with those involved in the cases of McKesson and Robbins v. United States, Abstract 41762 and Abstract 41763, reported in 2 Customs Court, 787, and 2 Customs Court, 789, wherein this Court held them to be bottles. The offer is that these containers are identical in appearance, material, and manufacture as those involved in the cases cited, McKesson & Robbins v. The United States.

MR. VITALE: The Government so stipulates.

JUDGE JOHNSON: So stipulated.

MR. QUALEY: I also offer to stipulate that the containers in the shipment involved in this protest contain port wine when imported.

MR. VITALE: The Government will so stipulate.

JUDGE JOHNSON: So stipulated.

MR. QUALEY: I also offer to stipulate that the cost of the Royal Doulton Ware Don Decanters, of which this is a representative sample, is 132 shillings per case of one dozen, and is included in the amount stated; the cost of cases, packing, etc., is 24 shillings per case, and is also included in the amount stated. The amount stated is 210 shillings per case of 12 bottles.

MR. VITALE: The Government so stipulates.

JUDGE JOHNSON: So stipulated.

Counsel for the plaintiff called three witnesses to testify. Samuel C. Fillat, in charge of the purchase of imported wines and spirits for McKesson & Robbins from November 1937 to April 1944, testified that he was familiar with the wine bottle representing the Sandeman trade-mark; that it contained a particular type of sherry and was assessed for duty at one-third the rate usually applicable thereto; and that had been true during the period he was with McKesson & Robbins. On cross-examination, the witness admitted that the bottles might be used for advertising purposes after being emptied. Alain Joseph testified that he was the American representative for the Sandeman Co. since May 1946 up to July 1950; that up to May 1947, McKesson & Robbins was the sole agent of Sandeman and, since that time, W. A. Taylor & Co. became the exclusive importer, distributor, and agent. Its duties, as were McKesson & Robbins', were to import and advertise the brand. The witness stated that "It has been the practice to put one type of sherry" or port in these particular bottles and not to his knowledge "have they ever put a different type" therein. This bottle was used to identify the particular brand of wine it contained and the trade-mark, which was more distinctive

than an ordinary bottle. The witness further testified that the wine is never removed from this type of bottle for the purpose of selling the bottle separately. In his opinion, this particular bottle is not adapted for use as a container after the removal of the contents for the reason that the shape of the hat prevents easy pouring and causes the liquid to drip over the brim of the hat. The witness was also of the opinion that the bottle, when empty, was not susceptible for use generally as an ornament for the reason that it is very easily knocked over. He admitted, however, that he has on occasions seen these bottles displayed in the home upon small bars to simulate a real bar, and he had seen a smaller size, formerly imported, on knickknack shelves. The witness pointed out, however, that only the bottles which are preserved are seen and not the ones thrown away after emptying.

The sales manager of W. A. Taylor & Co. testified that he has been familiar with this particular type of bottle for the past 10 years. In his experience, the bottle in question is always used to contain a certain type of wine, and the bottle is never sold separately as an article of commerce. He had seen them used, however, on home bars. He also was of the opinion that this particular type of bottle is not suitable as a container after it has been emptied of its contents because it has no lip and the brim of the hat obstructs the act of pouring, and that it is not a good container or bottle even for its original contents.

Joseph Zeikel, the examiner of merchandise at the port of New York, testified for the defendant that he had seen this type of bottle used, after it was emptied of its contents, in homes of friends in break fronts, on shelves, and on bars that were in the cellars and homes. He had also seen them used as an ornament on top of a television set. The witness admitted that he was not an expert on wines as to quality, but within his knowledge wines of the same invoice designation were imported in containers other than the particular type in question.

An examination of the sample discloses that it stands approximately 11 inches high upon an oval base. The figure is entirely wrapped in a long black cloak. The right arm within the cloak is swung to the left, shoulder high, and holds a wine-colored object, undoubtedly supposed to represent a wine glass. The exposed portion of the hand as well as the face is black like the cloak and hat, which is a part of the top portion of the head. The hat has a straight brim about 2¼ inches in diameter and a crown, on top of which is a black cork covering the mouth of the bottle. Of course, those desiring such a somber-looking object as an ornament might use it for that purpose, after it is emptied of its contents. The evidence does establish it is used on home bars. However, the evidence also establishes that a dozen bottles are worth 132 shillings, whereas the wine itself is worth only 54 shillings per

case of 12 bottles. Thus, the bottles are worth about 2½ times as much as the wine they contain.

In the case of *United States* v. *Charles H. Demarest, Inc.*, 19 C. C. P. A. 186, T. D. 45293, the merchandise consisted of containers in which ginger was imported. The containers were decorated, oval-shaped china jars, having similarly decorated covers or lids. Beneath the china cover was a wooden cork which prevented the contents from leaking. Although the evidence disclosed that the stem ginger put up in sirup had been imported in the same jars for 15 years and the importer had never imported it in any other kind of a jar, it was admitted that the importer's competitors sold the ordinary kind of ginger in a much cheaper clay container, and that the importer's ginger was for a high-class trade. The court considered the evidence as unsatisfactory as establishing that the containers were usual, but stated:

* * * assuming that, standing alone, it would be sufficient, there are other facts that should be considered which establish that the judgment below is against the weight of the evidence.

* * * * * * *

We call attention to the fact that the decorated cover or lid serves no useful purpose in the transportation of the ginger, since it rests loosely over the cork underneath the same, which alone prevents the ginger content from leaking. It is obvious to us that the decorated lid is provided so that the article may be used for a useful or decorative purpose after the ginger has been removed.

* * * * * * *

* * * we must accept as a fact that the containers have a value of approximately 50 per cent of their contents.

The lower court seems to have given no consideration to this fact which is a very material one. To hold that a container worth 17½ cents for a quantity of ginger worth 36 cents is a usual container for ginger would be justified only upon much stronger proof than has been adduced in this case.

In the case of *United States* v. *Hohner et al.*, 4 Ct. Cust. Appls. 122, T. D. 33393, our appellate court set out the facts to be considered in determining whether or not a container was unusual as follows:

But if it appears that they are unusual and designed for some substantial, material, or valuable use other than that of holding or containing the merchandise while being therein transported, they are then subject to the additional duty. The transportation referred to in the section may include placing the same in the hands of the retailer, or in some cases in the hands of the consumer, and an incidental use of the covering or container, if one exists, may be enjoyed by the retailer in selling the particular merchandise so transported. The value of the alleged unusual container or covering, as compared with that of its contents, may be important in determining whether it is or is not separately dutiable. If it appears that after its use as a holder or container of the merchandise imported therein it becomes a subject of trade and commerce here, or if it is generally devoted to other uses, its adaptability to which are an important inducement to the consumer to purchase the same with its contents, or if it is sold with its contents and materially enhances the value thereof to the consumer, any such facts may warrant its separate duty assessment under the section. * * *

In view of the decisions of our appellate court in the *Demarest* and *Hohner* cases, *supra*, we are of opinion that the bottles in question should be classified as unusual containers, particularly in view of the difference in the value of the containers and the wine contained therein.

In the cases of *McKesson & Robbins* v. *United States*, 2 Cust. Ct. 787, Abstract 41762, and *McKesson & Robbins, Inc.* v. *United States*, 2 Cust. Ct. 789, Abstract 41763, involving identical containers, this court did not consider the question of whether or not the containers were unusual. The court observed that, under the provisions of section 504, *supra*, if the bottles were unusual to the class of merchandise contained therein, they would be dutiable at the appropriate rate for chinaware. But when read in connection with paragraph 810, the bottles would be dutiable at only one-third the rate provided therefor, if imported empty or separately. The court construed section 504 as providing a duty for containers which are unusual when containing ad valorem goods, first, at the rate of the contents, and second, at the normal rate of such article, if imported empty. But when such covering contains merchandise dutiable at a specific rate, or free merchandise, the bottle is dutiable at the normal rate, if imported empty. Inasmuch, however, as paragraph 810 provided for a duty upon bottles or jugs at one-third the normal rate, whether holding ad valorem or specific-duty beverages under schedule 8, the duty provided for in section 504 was not applicable, even though the covering was of any unusual material, article, or form designed for use otherwise than in the *bona fide* transportation of the contents thereof. For that reason, the court did not specifically pass upon the question of whether or not the bottles came within the class of unusual containers.

However, in the case of *United States* v. *W. J. Mulligan & Co.*, 29 C. C. P. A. 117, C. A. D. 179, the articles consisted of glass containers filled with alcoholic liqueurs or cordials. They were in the form of penguins, chickens, pelicans, owls, elephants, and dogs. The collector classified the containers as articles of glass under the provisions of paragraph 218, by virtue of section 504, as unusual containers. The importer claimed that the articles were bottles under the provisions of paragraph 217 and, for the reason that they were containers of liqueurs and cordials, that they were dutiable at only one-third the rate applicable to bottles, by virtue of paragraph 810, *supra*. Although this court failed to reverse the collector's classification under the provisions of paragraph 217, as articles of glass, it held the articles dutiable at only one-third the rate applicable to such articles, by virtue of paragraph 810. The court evidently failed to note that paragraph 810 restricted such reduced rate to such containers as were bottles or jugs. Upon appeal, the appellate court inferred that the importer did not press the claim under paragraph 217 covering glass

bottles or jugs, but instead of merely reversing the lower court on the ground that paragraph 810 was inapplicable unless the containers were bottles or jugs, the court went on to consider the effect of section 504 upon the provisions of paragraph 810. In that respect, the court stated:

\* \* \* it appears to be the position of appellee that even though they be unusual containers within section 504, *supra*, they nevertheless are subject to the provisions of paragraph 810, *supra*.

With this contention we are unable to agree.

Section 504, *supra*, of the Tariff Act of 1930 appears as one of the administrative provisions of the act, and it seems to us that by its terms it modifies all schedules and paragraphs embraced in the various titles relating to classification and rates of duty. It does not affect the question of classification *per se*, but does affect the rate based upon such classification. If the articles here involved had been imported unfilled, we must assume for the purposes of this case that they would have been classifiable under paragraph 218 (f), *supra*, and it seems to us that if they were unusual containers for the merchandise with which they were filled, paragraph 810, *supra*, may not properly be invoked.

It would not be reasonable to hold that the Congress intended to give *unusual* containers of the merchandise covered by the respective paragraphs in schedule 8, a rate status different from that given *unusual* containers of other kinds of merchandise. [Italics quoted.]

The *Mulligan* case, *supra*, in effect, reversed this court's holding in the *McKesson & Robbins* cases, *supra*. In view of the *Mulligan* case, *supra*, the classification by the collector herein of the Sandeman trade-mark containers as being unusual in character, in our opinion, was properly made. We note, in argument of counsel, it is contended that the assessment of these bottles as unusual containers constitutes an alleged change of practice within the provisions of section 315, as amended. The applicable portions of that section of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provide:

SEC. 315. EFFECTIVE DATE OF RATES OF DUTY.

\* \* \* No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties.

In the *McKesson & Robbins* cases, *supra*, the collector made his assessment upon the basis of the containers being unusual. The court did not dispute such finding of the collector nor hold that the bottles were not unusual. On the other hand, the court in those cases held that it was immaterial whether or not the bottles were in the class of unusual containers for the reason that paragraph 810 reduces all rates on bottles holding alcoholic beverages to one-third their normal rate. Therefore, section 504 was in effect held inoper-

ative insofar as it pertained to liquor or wine bottles, even though unusual in form or design. Our appellate court, however, took the opposing view, holding that section 504 invaded all paragraphs of the act. Therefore, bottles which were unusual containers should be assessed for duty at the rate applicable, if separately imported. This holding, in effect, made paragraph 810 inoperative as to bottles coming within the term of unusual containers.

Inasmuch as the collector based his action upon the ruling of the appellate court in the *Mulligan* case, *supra*, rather than upon any administrative ruling, we are of the opinion that there has not been any change of practice on the part of the collector in holding that the Sandeman bottles are unusual in form, design, etc.

For the reasons stated judgment will be entered in favor of the defendant.